**Linda Stine CRAWFORD, as Personal Representative of the Estate of Farrell Alan Stine, Deceased, Plaintiff and Appellant,**

v.

**Derald A. TILLEY, Berwin F. Tilley, Carolyn Y. Winterrose, and Empire Enterprises, Inc., a Utah corporation, Defendants and Appellees.**

No. 860572.

Supreme Court of Utah.

Sept. 29, 1989.

Charles H. Thronson, Salt Lake City, for appellant.

Raymond M. Berry, John R. Lund, Salt Lake City, for defendants and appellees.

DURHAM, Justice:

Plaintiff brought suit against defendants seeking damages for the wrongful death of her adult son on defendants' property. The trial court granted summary judgment in favor of defendants on the ground that the Utah Limitation of Landowner Liability Act, Utah Code Ann. §§ 57–14–1 to 57–14–7 (1979 & Supp.1985), barred plaintiff's action. Plaintiff appeals, arguing that the Landowner Liability Act should not protect defendants from liability. We agree that the Landowner Liability Act does not apply in this case. Accordingly, we vacate the summary judgment and remand the case for trial under common law standards of landowner liability.

On October 29, 1984, plaintiff's 21–year-old son, Farrell Stine, defendants' son, Steven Tilley, and another man were found dead inside a rural mountain cabin owned by defendants. The cause of death was carbon monoxide poisoning from an improperly vented propane wall heater system in the cabin. Defendants had been aware of chronic problems with the ventilation and had allowed an older son, Craig Tilley, to attempt to repair the system. Defendants had provided Craig with a key to the cabin for maintenance purposes and had instructed him not to loan the key or the cabin to others without permission.

On October 27, 1984, defendants' younger son, Steven, and his two companions obtained the key to the cabin from Craig for a weekend hunting trip. Defendants, Steven's and Craig's parents, were out of town and did not know that Steven planned to use the cabin. Further, defendants had imposed a family rule that Steven was not to use the cabin without defendants or other married relatives present. Craig gave Steven the key, however, and the three young men went to the cabin and subsequently died.

Defendants' cabin was located in a private development of mountain homes. Although the development was not fenced and there were no signs posted against public use, access to the development was via dirt roads protected by locked gates. The development was also subject to restrictive covenants prohibiting hunting on the property by all persons except lot owners and their personal guests. Further, the Tilley cabin was kept locked. Thus, neither the cabin nor the surrounding property was made available to any members of the public for recreational use.

Plaintiff filed suit against defendants for damages for the death of her son inside the Tilley cabin. Defendants filed a motion for summary judgment on the ground that the Utah Limitation of Landowner Liability Act barred plaintiff's action, or, in the alternative, that plaintiff's decedent was a common law trespasser and defendants owed no duty to warn of the faulty ventilation system inside the cabin. The trial court granted defendants' motion on the basis of the statute, expressing no opinion as to the legal status of plaintiff's decedent under the common law.

On appeal, plaintiff has raised the following issues: (1) whether Utah Code Ann. §§ 57–14–1 to 57–14–7 should protect defendants from liability; (2) whether this application of the Landowner Liability Act would violate the equal protection, open courts, and wrongful death provisions of the Utah Constitution; and (3) whether plaintiff's decedent was a common law trespasser.

The legislature enacted the Landowner Liability Act in 1979 to limit landowners' duty of care toward recreational users of their property. The purpose of the act as provided in section 57–14–1 is to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes." In keeping with this statement of purpose, plaintiff argues that the Landowner Liability Act should not protect from liability landowners who have not opened their property for public recreational use. Because the Tilley cabin and surrounding property were not made available for public use, plaintiff maintains that defendants

should not be allowed to invoke the protection of the statute.

Defendants argue that the plain language of the statute places no public access requirement on landowners. "Owner" is defined in section 57–14–2 as "the possessor of any interest in the land." Section 57–14–3 provides that "an owner of land owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons." Relying on the broad language of section 57–14–3, defendants maintain that landowners need not open their land to any members of the public to invoke the protection of the statute. However, section 57–14–4 specifically limits the liability of a landowner who "directly or indirectly invites or permits" non-paying recreationists to use the land.[1]

The language of the Utah statute is based on a model act drafted by the Council of State Governments in 1965. *See* Council of State Governments, *Public Recreation on Private Lands: Limitations on Liability*, 24 Suggested State Legislation 150 (1965) [hereinafter Council of State Governments]. The Utah legislature chose to adopt the model act, complete with the suggested statement of purpose at section 57–14–1, rather than to delete that statement as was done by the legislatures of North Dakota, Wyoming, and New Jersey. *See* N.D.Cent.Code §§ 53–08–01 to 53–08–06 (1965); Wyo.Stat. §§ 34–19–101 to 34–19–106 (1965); N.J.Stat.Ann. §§ 2A:42A–2 to 2A:42A–7 (1968). Because the Utah legislature adopted the model act virtually unchanged, its preamble is relevant in construing the legislature's intent:

> Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available. ... [I]n those circumstances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

Council of State Governments at 150.

■ As both section 57–14–1 and the preamble to the model act indicate, the intent of the Landowner Liability Act is to promote the opening of private lands to

---

1. Utah Code Ann. §§ 57–14–1 to 57–14–7, entitled "Limitation of Landowner Liability—Public Recreation," provides in pertinent part:

 57–14–1. Legislative purpose.
 The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes.

 . . . .

 57–14–3. Owner owes no duty of care or to give warning—Exceptions.
 Except as specifically provided in Subsections (1) and (2) of § 57–14–6, an owner of land owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons.

 57–14–4. Owner's permitting another to use land without charge—Effect.
 Except as specifically provided in Subsection (1) of § 57–14–6, an owner of land who either directly or indirectly invites or permits without charge any person to use the land for any recreational purpose does not thereby:

 (1) make any representation or extend any assurance that the premises are safe for any purpose;
 (2) confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed;
 (3) assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of the person or any other person who enters upon the land; or
 (4) owe any duty to curtail his use of his land during its use for recreational purposes.

 . . . .

 57–14–6. Liability not limited where willful or malicious conduct involved or admission fee charged.
 Nothing in this act limits in any way any liability which otherwise exists:
 (1) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity or for deliberate, willful, or malicious injury to persons or property; or
 (2) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land or use the land for any recreational purpose. . . .

public recreational use. As this Court has frequently stated, our primary responsibility in construing legislative enactments is to give effect to the legislature's underlying intent. *See, e.g., West Jordan v. Morrison*, 656 P.2d 445 (Utah 1982); *Millett v. Clark Clinic Corp.*, 609 P.2d 934 (Utah 1980). Further, as provided in Utah Code Ann. § 68–3–2 (1953), the statutes of this state are to be "liberally construed with a view to effect the objects of the statutes and to promote justice." To extend application of the Landowner Liability Act to landowners who actively discourage or preclude public access to their property would be to disregard the legislature's intent and to derogate the purpose of the statute.[2] Therefore, this Court holds that landowners who have not made their property available to at least some members of the general public for recreational purposes may not invoke the protection of the act.

Like Utah, a number of other states have adopted the Council of State Governments' model act, including the statement of purpose. Six of these states have addressed the question of a public access requirement for landowners seeking the protection of the statute: Delaware, Georgia, Illinois, Minnesota, Nebraska, and Pennsylvania. Only two of these states, Illinois and Pennsylvania, have declined to include a public access requirement in construing their statutes. *See Johnson v. Stryker Corp.*, 70 Ill.App.3d 717, 26 Ill.Dec. 931, 388 N.E.2d 932 (1979); *Barrett v. Pennsylvania Gas & Water Co.*, 631 F.Supp. 731 (M.D.Pa. 1985); *Gallo v. Yamaha Motor Corp.*, 363 Pa.Super. 308, 526 A.2d 359 (1987).

By contrast, we agree with the reasoning of the Delaware Supreme Court in *Gibson v. Keith*, 492 A.2d 241 (Del.1985), which held that the recreational use statute did not protect landowners who discouraged public access to their property by posting "no trespassing" signs. In *Gibson*, the plaintiff was injured while diving into a water hole in the defendants' gravel pit. In keeping with the statute's statement of purpose, the Delaware court held that "an invitation or permission (direct or indirect) extended by a landowner to the public to enter without charge for recreational purposes is a *sine qua non* for invoking the statute's protective benefits." *Id.* at 244. Although the statute did not apply to the defendants, they were free to assert any available common law defense to liability. *Id.*

■ Delaware's recreational use act is nearly identical to Utah's Landowner Liability Act. *See* Del.Code Ann. tit. 7, §§ 5901 to 5907 (1974). The defendants in *Gibson* argued that the broad language of section 5903 (corresponding to Utah Code Ann. § 57–14–3) protected them from liability even though they had not made their property available for public recreational use. The Delaware court concluded that this reading of section 5903 would conflict with the statement of legislative purpose and would render section 5904 (corresponding to Utah Code Ann. § 57–14–4) superfluous. Like the Delaware provision, Utah Code Ann. § 57–14–4 limits the liability of a landowner who "invites or permits" recreational use. Under the broad reading of section 57–14–3 urged by defendants, section 57–14–3 would adequately protect such a landowner, and section 57–14–4 would be redundant. We agree with the approach of the Delaware Supreme Court in reconciling the two corresponding Delaware statute sections. Accordingly, we believe that Utah Code Ann. § 57–14–3 limits the *duties* of an accommodating landowner (consistent with the section 57–14–1 statement of legislative purpose), while section 57–14–4 limits the *liability* of a landowner who "directly or indirectly invites or permits" recreational users on the land.

■ Georgia, Minnesota, and Nebraska have opted for similar constructions of their nearly identical recreational use statutes. *See Herring v. Hauck*, 118 Ga.App. 623, 165 S.E.2d 198 (1968); *Georgia Power Co. v. McGruder*, 229 Ga. 811, 194 S.E.2d 440 (1972); *Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422 (Minn.1983); *Watters v. Buckbee Mears Co.*, 354 N.W.2d 848

---

2. For a detailed analysis of Utah's Limitation on Landowner Liability Act, see Butler, *Outdoor* *Sports and Torts: An Analysis of Utah's Recreational Use Act*, 1988 Utah L.Rev. 47.

(Minn.Ct.App.1984); *Gallagher v. Omaha Public Power Dist.*, 225 Neb. 354, 405 N.W.2d 571 (1987). Plaintiff has raised challenges to the Utah statute pursuant to the uniform operation of the laws, open courts, and wrongful death provisions of the Utah Constitution. We have frequently held that it is the duty of this Court to construe statutes to avoid constitutional conflicts. *See, e.g., Utah State Road Comm'n v. Friberg*, 687 P.2d 821 (Utah 1984); *State v. Lindquist*, 674 P.2d 1234 (Utah 1983); *State v. Wood*, 648 P.2d 71 (Utah 1982). Under uniform operation of laws analysis as well as due process balancing analysis applicable under the open courts provision, a statute is invalid if the classifications established do not provide a reasonable basis for promoting the objectives of the statute. *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985); *Malan v. Lewis*, 693 P.2d 661 (Utah 1984). If this Court were to extend the protection of the Landowner Liability Act to landowners who have not opened their property to public recreational use, the established classification of protected landowners would arguably fail to promote the objectives of the statute. By limiting the protection of the statute to landowners whose property is available for public recreational use, we remain true to the statute's purpose and avoid an unconstitutional application of the act. Because the statute does not apply in this case, we do not reach plaintiff's other constitutional challenges.[3]

 The final issue plaintiff has presented on appeal is whether plaintiff's decedent was a common law trespasser on defendants' property. The trial judge declined to decide this issue on summary judgment and instead based his judgment for defendants on the Landowner Liability Act. We therefore remand this case to the trial court to determine the decedent's legal status under common law standards of landowner liability.

**3.** In addition to the constitutional questions, plaintiff raised other issues concerning the application of the Landowner Liability Act: whether plaintiff's decedent was a recreational user within the meaning of the statute and

Summary judgment in favor of defendants is vacated, and this case is remanded to the trial court for proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

whether the decedent was engaged in recreational activity within the meaning of the statute at the time of his death. Because we have construed the statute to include a public access requirement, we do not reach these other issues.