Gerald GOLDING, individually, and as representative of the heirs of Randal Golding, deceased, Plaintiff and Appellant,

v.

**ASHLEY CENTRAL IRRIGATION COMPANY, a Utah corporation, Defendant and Appellee.**

No. 880025.

Supreme Court of Utah.

April 23, 1990.

Richard I. Ashton, David A. Wilde, Murray, for plaintiff and appellant.

Clark B. Allred, Gayle F. McKeachnie, Vernal, for defendant and appellee.

ZIMMERMAN, Justice:

Gerald Golding appeals from the grant of a motion by defendant Ashley Central Irrigation Company for judgment on the pleadings and the consequent dismissal of Golding's wrongful death action against the irrigation company. Golding asserts that the trial court erred in concluding (i) that the Limitation of Landowner Liability Act ("the Act") applied to the facts of this case, thereby shielding the irrigation company from liability for negligence, and (ii) that the complaint did not adequately allege a "willful or malicious failure to guard or warn against a dangerous condition" on its property that would permit Golding to recover under section 57–14–6 of the Act. We conclude that the pleadings are insufficient to demonstrate that the Act's protections are available to the irrigation company. Therefore, we reverse and remand to the trial court for further proceedings.

■ The grant of a motion for judgment on the pleadings is reviewed under the same standard as the grant of a motion to dismiss, i.e., we affirm the grant of such a motion only if, as a matter of law, the plaintiff could not recover under the facts alleged. And in considering the factual allegations in the complaint, we take them as true and consider them and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff. *E.g., Lowe v. Sorenson Research Co.*, 779 P.2d 668,

669 (Utah 1989); *Arrow Indus., Inc. v. Zions First Nat'l Bank*, 767 P.2d 935, 936 (Utah 1988). The facts are stated here in accordance with this standard of review. *See, e.g., State v. Verde*, 770 P.2d 116, 117 (Utah 1989).

On June 25, 1986, Randal Golding, seventeen, and four teenaged friends went swimming in an irrigation canal owned by Ashley Central Irrigation Company. There were no warnings posted of any dangers posed by swimming in the canal. While swimming, one of the boys went over a spillway and became trapped in the backwash created at the bottom. Jumping in to save his friend, Randal was caught in the backwash and swept under the surface. He was found approximately 150 feet downstream from the spillway some twenty minutes later. He died two days later.

Randal's father, Gerald Golding, filed an action against the irrigation company in June 1987 for wrongful death. The complaint was couched in negligence terminology and alleged basically that the irrigation company failed to properly maintain its waterways and post warnings. The irrigation company answered in July 1987, denying all claims and alleging as a defense, inter alia, that the complaint "failed to state a claim upon which relief could be granted." It then filed a motion for judgment on the pleadings. As a ground for the motion, the irrigation company raised for the first time a claim that because the boys were using the canal for recreational purposes, any cause of action against the irrigation company sounding in mere negligence was barred under the Limitation of Landowner Liability Act. *See* Utah Code Ann. §§ 57–14–1 to –7 (1986) (amended in part 1987 & 1988).[1] Golding filed a memorandum in

---

1. These sections provide in pertinent part:

   57–14–1. Legislative purpose.

   The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes.
   . . . .
   57–14–3. Owner owes no duty of care or to give warning—Exceptions.

   Except as specifically provided in Subsections (1) and (2) of § 57–14–6, an owner of land owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons.
   57–14–4. Owner's permitting another to use land without charge—Effect.

opposition, arguing that the irrigation company could not claim the protection of the Act for a number of reasons, but he did not raise the argument that the irrigation company had waived the defense of the Act by not asserting it in its answer. Alternatively, Golding contended that even if the Act were applicable, the allegations of the complaint were sufficient to state a claim under section 57–14–6(1) of the Act, which provides, "Nothing in this act limits in any way any liability which otherwise exists ... for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity...." Utah Code Ann. § 57–14–6 (1986) (amended 1988).

The court granted the irrigation company's motion for judgment on the pleadings. It held that the Act applied and that Golding's complaint did not allege a willful or malicious failure to warn which would bring the action under section 57–14–6. The case was ordered dismissed. Golding appealed.

■ Before addressing the merits of the appeal, we address the pleading and the procedure that led to the ruling below, because it raises a practice issue of general concern to the courts and bar. Had Golding timely moved, he would have been entitled to an order striking that portion of the motion for judgment on the pleadings that relied on the Act as a defense to any negligence claim. Utah Rule of Civil Procedure 12(b) provides that any defense shall be asserted in a responsive pleading. Utah R.Civ.P. 12(b). Utah Rule of Civil Procedure 8(c) provides that a responsive pleading must set forth any matter "constituting

an avoidance or affirmative defense." And rule 12(h) provides that a party "waives all defenses ... which [he or she] does not present either by motion ... or ... in his [or her] answer or reply...." The Act certainly constitutes an "affirmative defense" or an "avoidance," inasmuch as it denies liability not because the allegations of the complaint are not true, but because the legislature is claimed to have relieved the irrigation company of the liability usually associated with negligence. Therefore, to preserve the Act as a defense, it had to be raised in the irrigation company's answer. *Valley Bank & Trust Co. v. Wilken*, 668 P.2d 493, 493–94 (Utah 1983); Utah R.Civ.P. 8(c).

■ Here, defendant's responsive pleading was its answer, and that pleading did not mention the Act. It only asserted, in the general terms of rule 12(b)(6), that the complaint failed to state a claim upon which relief could be granted. Although such a defense is commonly pleaded in Utah as a matter of form and counsel for the irrigation company may have thought that by putting a 12(b)(6) statement in the answer he had preserved the question of the Act's applicability, such a generally pleaded defense adds nothing to an answer because it gives no notice of the substance of the defense. *See generally* Utah R.Civ.P. 8(b), (c), (e). Therefore, because the irrigation company did not properly preserve the Act as a defense, it was waived and plaintiff was entitled to object to its being raised in the motion for judgment on the pleadings. However, by not objecting, the plaintiff, in turn, waived this

---

Except as specifically provided in Subsection (1) of § 57–14–6, an owner of land who either directly or indirectly invites or permits without charge any person to use the land for any recreational purpose does not thereby:

(1) make any representation or extend any assurance that the premises are safe for any purpose;

(2) confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed;

(3) assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of the person or any other person who enters upon the land; or

(4) owe any duty to curtail his [or her] use of his [or her] land during its use for recreational purposes.
....

57–14–6. Liability not limited where willful or malicious conduct involved or admission fee charged.

Nothing in this act limits in any way any liability which otherwise exists:

(1) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity or for deliberate, willful, or malicious injury to persons or property....

Utah Code Ann. §§ 57–14–1 to –6 (1986) (amended in part 1987 & 1988).

defective mode of placing the Act in issue. *See Lewis v. Porter,* 556 P.2d 496, 497 (Utah 1976). We therefore address the question of the Act's applicability.

The Act's applicability can be determined by reference to a decision of this court handed down after completion of the briefing of the instant appeal. In *Crawford v. Tilley,* 780 P.2d 1248 (Utah 1989), the trial court found that the Act freed the owner of a cabin with a negligently maintained wall heater from liability when sued by the parents of a young hunter who had been asphyxiated.[2] The cabin was located in a private development which was not made available to the public for recreational use and had locked entry gates on the roads but was not fenced or posted against trespassing. The cabin owners contended that under section 57–14–3 of the Act, owners of any property are freed from a duty of ordinary care to recreational users to maintain their property in a safe condition or warn of hazards. We rejected this contention and held that the Act was inapplicable under the *Crawford* facts.

In the *Crawford* opinion, we delved into the background of the Act and found that the purpose of these provisions and of the provisions in section 57–14–3 and 57–14–4 that specifically limit the common law liability of a landowner who "directly or indirectly invites or permits" non-paying recreational use of its land to any such recreational users is "to promote the opening of private lands to public recreational use." 780 P.2d at 1250–51. We concluded that it would be inconsistent with this purpose to extend the protections of the Act to landowners "who actively discourage or preclude public access to their property." *Id. Crawford,* therefore, held that before a landowner could qualify for the limitations on common law liability, it must show that it has "made [its] property available to at least some members of the general public for recreational purposes." 780 P.2d at 1251; *see* Butler, *Outdoor Sports and Torts: An Analysis of Utah's Recreation-*

*al Use Act,* 1988 Utah L.Rev. 47, 71–76 [hereinafter Butler].

Turning to the present case, the district court did not have the benefit of *Crawford* when presented with the irrigation company's motion. In granting that motion, the court held only that the provisions of the Act were applicable; it did not discuss the basis for that determination. Because *Crawford* teaches that the owner must have made the property available for recreational use to obtain the Act's protection, and because the record contains no evidence from which such a determination can be made, the irrigation company has not shown that it qualifies for the Act's limitations on liability. The district court's decision on the Act's applicability must be reversed and the case remanded for further proceedings on that question under the guidance of *Crawford.*

Should the trial court find the Act applicable, it will have to address the question of whether the allegations of the complaint are sufficient to satisfy section 57–14–6's preservation of liability for willful or malicious conduct. Because the issue has been fully briefed here and may well be presented on remand, we will discuss the trial court's finding that Golding's complaint contained no allegation of "willful or malicious failure to guard or warn against any condition existing in, on or about the canal." Such a step is appropriate under our rules. R.Utah S.Ct. 30(a); *see Hiltsley v. Ryder,* 738 P.2d 1024, 1026 (Utah 1987) (Zimmerman, J., concurring); *Anderson v. Utah County Bd. of County Comm'rs,* 589 P.2d 1214, 1216 (Utah 1979); *Salt Lake County v. Salt Lake City,* 570 P.2d 119, 121 (Utah 1977); *Lopes v. Lopes,* 30 Utah 2d 393, 395, 518 P.2d 687, 688 (1974); *LeGrand Johnson Corp. v. Peterson,* 18 Utah 2d 260, 263, 420 P.2d 615, 617 (1966).

We have not had occasion to construe section 57–14–6 or to determine what is necessary to satisfy its requirements. The leading article on the Utah Act says that analogous provisions in other similar state

---

**2.** The trial court's decision in *Crawford* was the subject of a lengthy and scholarly law review article. *See* Butler, *Outdoor Sports and Torts:*

*An Analysis of Utah's Recreational Use Act,* 1988 Utah L.Rev. 47.

acts have often been referred to as imposing a duty on landowners toward recreational users falling under the statute that is "analogous to a landowner's duty toward an unknown trespasser at common law." Butler, at 95. In *Ewell v. United States,* 579 F.Supp. 1291 (D.Utah 1984), *aff'd,* 776 F.2d 246 (10th Cir.1985), the federal district court addressed the Utah Act. While it did not address the duty imposed by Utah trespass law, it did note that one reading we had given to the terms "willful misconduct" and "willful and malicious" in other contexts was " 'the intentional failure to do an act, with knowledge that serious injury is the probable result.' " *Id.* at 1295 (quoting *Brown v. Frandsen,* 19 Utah 2d 116, 117, 426 P.2d 1021, 1022 (1967)) (defining "willful misconduct"). Another reading we have given the terms noted is " 'such gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness.' " *Id.* at 1295–96 (quoting *Clayton v. Crossroads Equip. Co.,* 655 P.2d 1125, 1131 (Utah 1982)) (dictum relying on non-Utah sources equating "willful and malicious" with "gross negligence" or "reckless indifference"). *But see Atkin Wright & Miles v. Mountain States Tel. and Tel. Co.,* 709 P.2d 330, 335 (Utah 1985) (dictum defining "willful misconduct" as one step beyond "gross negligence," which is defined as "reckless indifference," in that "a defendant must be aware that his conduct will probably result in injury"). The federal court also noted that Prosser describes "willful or wanton misconduct" as "an aggravated form of negligence, different in quality rather than degree from ordinary lack of care." *Id.* at 1296 (quoting W. Prosser, *Law of Torts* § 34, at 184 (4th ed. 1971)). The federal district court did not attempt to reconcile any conflict in the Utah cases, but simply found the complaint insufficient to allege the degree of "intent, knowledge or reckless indifference ... of

any dangerous condition" required by section 57–14–6.

■ According to Butler, the standard quoted by the federal court from *Brown v. Frandsen,* which incorporates the elements of knowledge of the dangerous condition and of the fact that serious injury is a probable result, and inaction in the face of such knowledge, is consistent with Utah case law, with the Act's legislative history, and with the decisions of a majority of courts that has addressed analogous recreational use statutes. Butler, at 95–96. We also note that it is consistent with our statement in *Atkin Wright & Miles* and not obviously inconsistent with the general law regarding the duties of a landowner to trespassers, which has never been spelled out in Utah in great detail. *See, e.g., Tjas v. Proctor,* 591 P.2d 438, 441 (Utah 1979); *Stevens v. Salt Lake County,* 25 Utah 2d 168, 478 P.2d 496 (1970); *In re Wimmer's Estate,* 111 Utah 444, 182 P.2d 119 (1947); Zillman, *Utah Tort Law* 40–42 (1987). We, therefore, are inclined to adopt the interpretation of the term "willful or malicious" in section 57–14–6 suggested by Butler.

Applying that standard to the facts of the instant case, we conclude that these three elements are not alleged. Paragraph 11(e) states:

> Defendant breached the duty of care owed to Plaintiff and was negligent in at least the follow [sic] particulars[:]
>
> ...;
>
> (e) in failing to take reasonable action to protect the public in the face of knowledge and information that its canals, ditches, spillways and waterways were unreasonably dangerous to life and limb....

Nothing in the quoted allegations avers a knowledge of a dangerous condition, a knowledge that serious injury is the probable result of contact with the condition, or a failure to take any action in the face of this knowledge. Golding's allegation is only of a failure to take "reasonable" action to protect the public in the face of knowledge of an unreasonably dangerous condition. This is an allegation of negligence only.[3]

---

3. It is worth noting that this allegation would

not be sufficient, even under the weaker "reck-

Therefore, if the Act is found to apply here, the allegations of the complaint, as presently framed, are insufficient to bring it within section 57–14–6.

On the other hand, if the trial court finds that the Act does not apply because the property was not made available by the irrigation company for public recreation by directly or indirectly inviting or permitting that use, the court must then determine whether the complaint alleges a common law cause of action for negligence, an issue that has not been briefed and to which we see no reason to speak.

We reverse and remand to the trial court to determine the Act's applicability and to proceed further in accordance with this opinion.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

less disregard" standard of *Clayton v. Crossroads*     *Equipment Co.,* 655 P.2d 1125 (Utah 1982).